**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY LERICHE<br>PLAINTIFF, | : | |
| v. | : | Civil Action No. |
| J.B. HUNT TRANSPORT, INC.,<br>DEFENDANT, | : | Jury Trial Demanded |

**CIVIL COMPLAINT**

PLAINTIFF, JEFFREY LERICHE by and through undersigned counsel, hereby files this Civil Action Complaint against DEFENDANT, J.B. HUNT TRANSPORT, INC., and avers the following:

**PARTIES**

1. PLAINTIFF is Jeffery Leriche, who was a resident of Cumberland County, Pennsylvania at all times relevant to these allegations.
2. DEFENDANT is J.B. HUNT TRANSPORT, INC., who at all times relevant hereto conducts business in Dauphin County, Pennsylvania.
3. At all times material hereto, DEFENDANT was the employer of PLAINTIFF.

**NATURE OF THE CASE**

4. Plaintiff now brings claims against the Defendant pursuant to the Americans with Disabilities Act 42 U.S.C §12203 (b) et. seq. ("ADA"); the Pennsylvania Human Relations Act 43 P.S. § 951, et seq. ("PHRA"); and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

**JURISDICTION AND VENUE**

5. This District Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as they arise under the laws of the United States.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Jurisdiction is proper in the Middle District of Pennsylvania as PLAINTIFF was and is at all relevant times domiciled in Mechanicsburg, Pennsylvania (Cumberland County) and DEFENDANT regularly and continuously conducts business at all relevant times in Harrisburg, Pennsylvania (Dauphin County).

8. Venue is proper in the Middle District of Pennsylvania as PLAINTIFF worked for DEFENDANT in Harrisburg, Pennsylvania and was terminated from employment on March 31, 2025.

9. On or about March 3, 2025, Plaintiff submitted a formal Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") under EEOC Case No. 17F202560711 and PHRC Case No. 202402491.

10. On or about August 3, 2026, PLAINTIFF received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, under EEOC Charge No. 17F-2025-60711. This action is being filed within the 90-day statute of limitations provided by the Notice of Right to Sue.

**MATERIAL FACTS**

11. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

12. PLAINTIFF, Jeffrey Leriche, began his employment with DEFENDANT, J.B. HUNT TRANSPORT, INC., on December 17, 2012.

13. During his employment, PLAINTIFF held several positions with DEFENDANT and was ultimately promoted to Director II, Operations.

14. Prior to his demotion, PLAINTIFF earned an annual salary of approximately $122,000.00.

15. Throughout his employment, PLAINTIFF performed his job duties satisfactorily and received favorable performance evaluations.

16. In or around 2023, PLAINTIFF was assigned a new supervisor, Brian Shwank.

17. During the 2023 performance evaluation process, Mr. Shwank initially assessed PLAINTIFF's performance as meeting expectations.

18. However, PLAINTIFF subsequently learned that Vice President Michael Benedict directed Mr. Shwank to lower PLAINTIFF's performance evaluation.

19. Following Mr. Benedict's involvement, PLAINTIFF received a performance evaluation indicating that improvement was needed, despite Mr. Shwank's initial assessment.

20. Following the altered evaluation, PLAINTIFF began experiencing increasingly hostile treatment from Mr. Shwank and Mr. Benedict.

21. Throughout 2023 and continuing into 2024, PLAINTIFF was subjected to disparaging comments, criticism regarding his performance, and exclusionary treatment by management.

22. PLAINTIFF also became aware of negative statements concerning his professional capabilities, which he believed did not accurately reflect his work performance.

23. The continued treatment by management caused PLAINTIFF significant stress and negatively impacted his physical and mental health.

24. Throughout 2024, PLAINTIFF began experiencing significant anxiety and elevated blood pressure, which required medical attention.

25. PLAINTIFF suffers from high blood pressure and anxiety, which constitute physical and mental impairments that substantially limit one or more major life activities, including, but not limited to, concentrating, thinking, and the normal functioning of his cardiovascular and neurological systems. As such, PLAINTIFF's medical conditions qualify as disabilities within the meaning of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

26. As his medical conditions worsened, PLAINTIFF's treating physician recommended that he take a medical leave of absence from his employment.

27. On December 6, 2024, PLAINTIFF worked his last day before commencing medical leave.

28. On December 9, 2024, PLAINTIFF began a medical leave of absence to receive treatment for his high blood pressure and anxiety.

29. DEFENDANT was aware of PLAINTIFF's medical conditions and his need to take leave from employment.

30. PLAINTIFF requested leave through DEFENDANT's designated leave administrator, Unum Life Insurance Company of America ("Unum").

31. On December 10, 2024, Unum issued documentation identifying December 9, 2024, as the commencement of PLAINTIFF's disability and approving Short-Term Disability benefits through December 20, 2024.

32. On December 18, 2024, Unum issued additional documentation extending PLAINTIFF's approved disability benefits through January 16, 2025.

33. PLAINTIFF remained on medical leave while continuing to receive treatment for his medical conditions.

34. On February 5, 2025, Unum issued additional documentation extending PLAINTIFF's approved disability benefits through February 27, 2025, with an anticipated return-to-work date of March 3, 2025.

35. On February 28, 2025, Unum issued further documentation extending PLAINTIFF's approved disability benefits through March 2, 2025, and confirming his anticipated return to work on March 3, 2025.

36. Mike Benedict transferred assignments to Grant Fleetwood on December 9, 2024 when he learned PLAINTIFF was going on medical leave. Benedict tried to persuade PLAINTIFF to take 1-2 weeks off verse going on protected medical leave.

37. PLAINTIFF's medical leave was protected under the Family and Medical Leave Act ("FMLA"), and DEFENDANT was aware that PLAINTIFF intended to return to work following his approved leave.

38. On March 3, 2025, PLAINTIFF returned to work following approximately twelve (12) weeks of medical leave.

39. Immediately upon his return, PLAINTIFF participated in an in-person meeting with Mike Benedict and Adam Armenti, with Human Resources representative Dawn Warner

participating via Microsoft Teams, during which PLAINTIFF was informed that he would no longer serve as Director II, Operations.

40. During this meeting, management informed PLAINTIFF that he was being demoted due to alleged performance deficiencies and that he was no longer considered "fit for the role."

41. PLAINTIFF was further informed that DEFENDANT had not expected him to return from medical leave and had already offered his position to another individual.

42. PLAINTIFF had not been informed before returning from medical leave that his position would be unavailable or that DEFENDANT intended to demote him.

43. Despite returning from approved medical leave, PLAINTIFF was not restored to his former position or an equivalent position with the same responsibilities and compensation.

44. Instead, DEFENDANT reassigned PLAINTIFF to the position of Senior Manager of Operations.

45. Effective March 5, 2025, PLAINTIFF's annual compensation was reduced by approximately $12,482.73, resulting in an annual salary of approximately $111,000.00.

46. In addition to the reduction in compensation, PLAINTIFF was assigned group project work that was unrelated to his prior responsibilities as Director II, Operations.

47. PLAINTIFF's reassignment substantially reduced his prior job responsibilities and removed him from the position he held before taking medical leave.

48. Following his demotion, PLAINTIFF attempted to obtain clarification from management regarding the reasons for the change in his position and responsibilities.

49. However, DEFENDANT failed to meaningfully address PLAINTIFF's concerns regarding his demotion and reassignment.

50. Despite PLAINTIFF's return from medical leave and his ability to perform the essential functions of his employment, DEFENDANT did not engage in a meaningful interactive process concerning his medical conditions or any accommodations necessary for his continued employment.

51. PLAINTIFF remained employed in the reassigned position throughout March 2025.

52. On March 31, 2025, approximately twenty-eight (28) days after returning from his medical leave, PLAINTIFF was informed by Adam Armenti, during an in-person meeting at DEFENDANT'S Harrisburg, Pennsylvania location, that his employment was being terminated.

53. DEFENDANT attributed PLAINTIFF's termination to an alleged decline in business.

54. However, PLAINTIFF was the only member of his team whose employment was terminated as a result of the purported business decline.

55. PLAINTIFF had worked for DEFENDANT for more than twelve (12) years before his termination.

56. PLAINTIFF's demotion occurred on the same day he returned from protected medical leave, and his termination occurred less than one month later.

57. Further, DEFENDANT's statement that it had not anticipated PLAINTIFF's return and had already offered his position to another individual shows that decisions concerning his employment were made while he was on medical leave.

58. PLAINTIFF believes that DEFENDANT's stated performance concerns and alleged decline in business were pretextual reasons for its decision to demote and subsequently terminate his employment.

59. PLAINTIFF further believes that DEFENDANT discriminated against him on the basis of his disabilities, in violation of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and that DEFENDANT's actions were motivated by his medical conditions, his need for medical leave, and his exercise of rights protected under the Family and Medical Leave Act ("FMLA").

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

60. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

61. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

62. To prove disability discrimination, plaintiffs must demonstrate: (i) they have a disability within the meaning of the ADA; (ii) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (iii) they have suffered an otherwise adverse employment decision as a result of discrimination. *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214 (3d Cir. 2024).

63. The ADA defines “disability” as: A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; B) a record of such impairment; or C) being regarded as having such impairment. 42 U.S.C. § 12102(1).

64. PLAINTIFF suffers from high blood pressure, which constitutes a physical impairment substantially limiting one or more of his major life activities. PLAINTIFF’s medical condition qualifies as a disability under the ADA.

65. PLAINTIFF suffers from anxiety, which constitutes a mental impairment that substantially limits one or more of his major life activities. PLAINTIFF’s mental health condition qualifies as a disability under the ADA.

66. PLAINTIFF was terminated due to his leave of absence for treatment of his medical and mental health disabilities.

67. Had PLAINTIFF not been disabled he would not have been terminated by DEFENDANT.

## COUNT II
## FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (“ADA”)

68. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

69. "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: '1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not

make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" *Williams v. Philadelphia Hous. Auth. Police Dep't,* 380 F.3d 751, 772 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999)).

70. DEFENDANT failed to engage in the interactive process required by the ADA to determine reasonable accommodations that would have allowed PLAINTIFF to continue performing the essential functions of his job. Instead, DEFENDANT refused to accommodate PLAINTIFF's medical restrictions and terminated his employment.

71. PLAINTIFF was qualified to perform the essential functions of his position with reasonable accommodations, which would not have posed an undue hardship on DEFENDANT.

72. DEFENDANT terminated PLAINTIFF instead of accommodating him or engaging in the interactive process to find a reasonable accommodation.

**COUNT III**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")**

73. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

74. The Pennsylvania Human Relations Act (PHRA) prohibits discrimination based on, among other characteristics, race, color, handicap, or disability. *43 P.S.* § 955(a).

75. The PHRA is to be "construed consistently with other relevant federal and state laws and regulations, except where such construction would operate in derogation of the purposes of the PHRA." *16 Pa. Code § 44.2(b); Morgan,* 114 F.4th at 220 n.21.

76. PLAINTIFF suffers from high blood pressure requiring treatment, which constitutes a physical impairment substantially limiting one or more of his major life activities. As such, PLAINTIFF was a qualified individual with a disability under the PHRA.

77. PLAINTIFF suffers from anxiety requiring treatment, which constitutes a mental health impairment substantially limiting one or more of his major life activities. As such, PLAINTIFF was a qualified individual with a disability under the PHRA.

78. At all relevant times, DEFENDANT was aware of PLAINTIFF's disabilities and his need for medical treatment and leave.

79. PLAINTIFF was qualified to perform the essential functions of his position, with or without reasonable accommodations.

80. On March 3, 2025, immediately upon PLAINTIFF's return from approved medical leave, DEFENDANT demoted PLAINTIFF from his position as Director II, Operations to Senior Manager of Operations, resulting in a reduction in compensation and job responsibilities.

81. At the time of his demotion, PLAINTIFF was informed that DEFENDANT had not anticipated his return from medical leave and had already offered his position to another individual.

82. On March 31, 2025, less than one month after PLAINTIFF returned from medical leave, DEFENDANT terminated his employment.

83. DEFENDANT attributed PLAINTIFF's termination to an alleged decline in business. However, PLAINTIFF was the only member of his team whose employment was terminated as a result of the purported business decline.

84. PLAINTIFF believes that DEFENDANT's stated reasons for his demotion and termination were pretextual and that DEFENDANT's actions were motivated by his disabilities and need for medical treatment.

85. DEFENDANT discriminated against PLAINTIFF on the basis of his disabilities by demoting him, reducing his compensation and responsibilities, and ultimately terminating his employment, in violation of the PHRA.

## COUNT IV
## FAILURE TO ACCOMODATE IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

86. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

87. DEFENDANT was aware of PLAINTIFF's disabilities and his need for medical treatment and leave.

88. PLAINTIFF required a medical leave of absence beginning December 9, 2024, to receive treatment for his disabilities.

89. PLAINTIFF's medical leave was approved, and he returned to work on March 3, 2025, following the conclusion of his approved leave.

90. Immediately upon his return, DEFENDANT demoted PLAINTIFF from his position as Director II, Operations and reassigned him to a position with reduced compensation and responsibilities.

91. DEFENDANT failed to engage in a meaningful interactive process with PLAINTIFF to determine whether reasonable accommodations were necessary to allow him to continue performing the essential functions of his position.

92. PLAINTIFF was qualified to perform the essential functions of his position, with or without reasonable accommodations.

93. Rather than engage in the interactive process or consider reasonable accommodations, DEFENDANT terminated PLAINTIFF's employment on March 31, 2025.

94. DEFENDANT's failure to engage in the interactive process and provide reasonable accommodations constituted a violation of the PHRA.

## **COUNT V**
## **RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

95. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

96. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) [s]he engaged in a protected activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Johnson v. Sage Dining Servs., Inc.*, No. 23-3929 SWR, 2024 U.S. Dist. LEXIS 201859, at pg. 27 (E.D. Pa. Nov. 6, 2024)

97. "The right to request an accommodation in good faith is a protected activity under the ADA." *Id.*

98. PLAINTIFF engaged in protected activity under the ADA by requesting medical leave as a reasonable accommodation for his disabilities.

99. DEFENDANT was aware of PLAINTIFF's protected activity and subsequently subjected him to adverse employment actions, including demotion, reduction in compensation, and termination in retaliation for PLAINTIFF requesting accommodations.

**COUNT VI**
**RETALIATION IN VIOLATION OF**
**THE PENNSYLVANIA HUMAN RELATIONS ACT; 43 P.S § 955(a)**

100. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

101. To state a retaliation claim under the Pennsylvania Human Relations Act (PHRA), a plaintiff must adequately plead that: (1) plaintiff engaged in protected activity; (2) a defendant took adverse action against plaintiff either after or contemporaneous with his protected activity; and (3) a causal connection exists between plaintiff's protected activity and that adverse action. *Hitch v. Pittsburgh,* No. 23-2065, 2024 U.S. App. LEXIS 12047, at pg. 1 (3d Cir. May 17, 2024)

102. PLAINTIFF engaged in protected activity under the PHRA by requesting medical leave as a reasonable accommodation for his disabilities.

103. DEFENDANT was aware of PLAINTIFF's protected activity and subsequently subjected him to adverse employment actions, including demotion, reduction in compensation, and termination in retaliation for PLAINTIFF requesting accommodations.

**COUNT VII**
**RETALIATION IN VIOLATION OF RIGHTS UNDER THE FMLA**

104. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

105. The FMLA prohibits employers from retaliating against employees for exercising or attempting to exercise their rights under the Act. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

106. PLAINTIFF was an eligible employee under the FMLA, having worked for DEFENDANT for more than 12 months and at least 1,250 hours in the preceding 12 months.

107. DEFENDANT was an employer subject to the FMLA requirements.

108. PLAINTIFF exercised his rights under the FMLA by taking approved leave to treat his high blood pressure and anxiety, as permitted under 29 U.S.C. § 2612(a)(1)(D).

109. PLAINTIFF engaged in protected activity under the FMLA when he requested and took FMLA leave, and he complied with DEFENDANT's leave policies.

110. DEFENDANT retaliated against PLAINTIFF by demoting his employment when he returned from FMLA leave, on the day he was scheduled to return to work.

111. DEFENDANT further retaliated against PLAINTIFF by terminating his employment when he returned from FMLA leave.

## COUNT VIII
## INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

112. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

113. The Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., provides that eligible employees are entitled to 12 workweeks of leave during any 12-month period due to an employee's own serious health condition. 29 U.S.C.S. § 2612(a)(1). When an employee returns from FMLA leave, the employer must restore the employee to the same

or equivalent position he held, with equivalent benefits and with conditions of employment comparable to those she had when she left. 29 U.S.C.S. § 2614(a).

114. To make a claim of interference under the Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 186 (3d Cir. 2014).

115. PLAINTIFF was an eligible employee under the FMLA, having worked for DEFENDANT for more than 12 months and at least 1,250 hours during the preceding 12 months.

116. DEFENDANT qualified as an employer subject to the requirements of the FMLA, as it engaged in commerce and employed at least 50 employees within a 75-mile radius.

117. PLAINTIFF exercised his rights under the FMLA by requesting and taking protected medical leave beginning December 9, 2024, to receive treatment for his high blood pressure and anxiety.

118. DEFENDANT was aware of PLAINTIFF'S medical conditions, his approved medical leave, and his anticipated return to employment.

119. During PLAINTIFF'S medical leave, DEFENDANT reassigned his duties and offered his position as Director II, Operations to another individual.

120. On March 3, 2025, immediately upon PLAINTIFF'S return from approximately twelve weeks of protected medical leave, DEFENDANT informed PLAINTIFF that he would not be restored to his former position.

121. Specifically, DEFENDANT informed PLAINTIFF that it had not anticipated his return from medical leave and had already offered his position to another individual.

122. Rather than restore PLAINTIFF to his former position or an equivalent position, DEFENDANT demoted PLAINTIFF to Senior Manager of Operations, substantially reducing his job responsibilities and compensation.

123. Effective March 5, 2025, PLAINTIFF'S annual compensation was reduced by approximately $12,482.73.

124. PLAINTIFF was capable of performing the essential functions of his former position upon his return from medical leave, and DEFENDANT failed to identify a legitimate basis that would have prevented his restoration to that position or an equivalent position.

125. DEFENDANT'S failure to restore PLAINTIFF to his former position or an equivalent position with equivalent pay, benefits, and responsibilities constituted interference with PLAINTIFF'S rights under the FMLA.

## JURY DEMAND

126. PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

127. WHEREFORE, PLAINTIFF, Jeffrey Leriche, respectfully requests that this Honorable Court enter judgment in his favor and against DEFENDANT, J.B. HUNT TRANSPORT, INC., and the Court, award PLAINTIFF actual damages for the loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest; compensatory

damages for distress, lost career, embarrassment, and humiliation; punitive damages; costs of this action and reasonable attorney's fees, and all other relief which PLAINTIFF may appear entitled or which the Court deems appropriate and just.

**STARK LAW GROUP, LLC**

By:_____/s/ Alexis Conrad___
Alexis Conrad
Attorney Bar No: 335686
1370 Harrisburg Pike
Lancaster, PA 17601
Phone: 717-844-6350
Email:alexis@starklawllc.com

DATE: October 27, 2026